UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

Case No._____

_____

STEFANIA ALBI, derivatively as shareholder

on behlaf of INDUSTRIAL MARINE s.r.l.,

Plaintiff,

v.

PRESTIGE CRUISE HOLDINGS INC., OCEANIA CRUISES INC.,

and, GABRIELE CAVICCHI et al,

Defendants.

 --- and ---

INDUSTRIAL MARINE s.r.l.,

Nominal Defendant.

_____/

# COMPLAINT

STEFANIA ALBI ("ALBI"), derivatively as shareholder on behalf of INDUSTRIAL MARINE s.r.l. Plaintiff, by and through its counsel, Tosolini, Lamura, Rasile & Toniutti LLP, in the above styled cause, sue Defendants, PRESTIGE CRUISE HOLDINGS, INC. ("PCH"), OCEANIA CRUISES, INC. ("OC"), and GABRIELE CAVICCHI ("Cavicchi") (collectively,

"Defendants") in a derivate suit on behalf of Industrial Marine, S.r.l. This action is filed under Federal Rules of Civil Procedure 23.1 and 28 U.S.C. 1332(a).

## NATURE OF THE CASE

1. This is a derivative action for breach of contract, statement of account, sale of goods, and a violation of Florida's Deceptive and Unfair Trade Practices (hereinafter "FDUTPA") as to PCH and OC and a claim for FDUTPA as to Cavicchi, in which Industrial Marine S.r.l. ("Industrial") derivatively through shareholder STEFANIA ALBI ("Albi") seeks to recover damages caused by Defendants plus interests, cost of litigation and attorney fees on behalf of Industrial. At the time of the alleged facts and presently Albi maintains a 40% shareholder with Industrial. Albi was formerly the sole director of Industrial. As sole director of Industrial, it was within Albi's legal authority to enter Industrial into commercial transactions, including the transaction at bar, in which Plaintiff, acting as sole director of Industrial, received an order from Defendants OC, and PCH ("Cruise Defendants") requesting parts and products from Industrial Marine S.r.l.. The order does not show Albi's name because, in her capacity as sole director of Industrial, she was intrinsically responsible for the order, as legal representative of the company. Subsequently, Industrial filed the order, delivered the goods to Cruise Defendants, and invoiced Cruise Defendants for the goods that were delivered. Cruise Defendants accepted the goods, but did not remit the payment to Industrial's Deutsche Bank account, on the contrary of the Parties' previous course of dealing and instruction. Unknown to the Plaintiff, sole director of Industrial and minority shareholder at the time of the facts, Cruise Defendants made payments on the invoices to an Emirates NBD Bank Account

associated with Defendant Cavicchi, husband of the majority shareholder at the time, Ms. Pau ("Pau") (see Exhibit C). The bank account was located in Dubai, UAE, based upon an invoice by a "Yodit Enterprises FZE". Yodit Enterprises FZE was at no time affiliated with Industrial in any way, and Defendants had knowledge that there was no affiliation between Industrial and Yodit Enterprises FZE (see Exhibit C). The payment to Cavicchi's personal account in Dubai, UAE, resulted in great losses to Industrial. Through information and belief, It is clear that a quid pro quo exchange occurred between Cavicchi and the Cruise Defendants in that in exchange for the diversion of the payment Cavicchi would reward the Cruise Defendants with discounts on goods and services in the present and future.

2. Albi does adequately represent Industrial's interests as shareholder and former director of Industrial. The fraudulent scheme ultimately led to Industrial becoming financially defunct.

**THE PARTIES**

3. At all relevant times hereinafter mentioned, Plaintiff, Albi, is an Italian citizen located at Via IV Novembre Nr 80, 21058 Solbiate Olona (Varese) Italy. She is presently a 40% shareholder and was the sole director of Industrial Marine S.r.l. In her quality as sole director and shareholder of Industrial, she adequately represents the interest of the company in this cause of action to ultimately enforce Industrial's rights against Prestige Cruise Holding, Inc., Oceania Cruises, Inc. and Cavicchi.

4. Upon information and belief, at all relevant times hereinafter mentioned, Defendant, PCH, is a corporation organized and existing under the laws of the State of Florida located at 7665 Corporate Center Drive, Miami, FL 33126, with its principal place of business in Miami, Florida.

5. Upon information and belief, at all relevant times hereinafter mentioned, Defendant, OC, is a corporation organized and existing under the laws of the State of Florida located at 7665 Corporate Center Drive, Miami, FL 33126, with its principal place of business in Miami, Florida. (both OC and PHC are affiliated companies).

6. Upon information and belief, at all relevant times hereinafter mentioned, Defendant Cavicchi operates, conducts, engages in, or carries on a business or business venture in the State of Florida and resides in both Florida and Dubai.

7. Nominal Defendant, INDUSTRIAL MARINE s.r.l., is an Italian company whose principal place of business is Quartu Sant'Elena (CA), Via Bach 58, Italy.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. 1332(a), by reason of the diversity of citizenship of the parties and the fact that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

9. There is complete diversity of citizenship between Plaintiff, who is an Italian citizen/company and Defendants, who are all citizens of Florida or Florida business entities with their principal place of business in Miami, Florida.

10. This Court has personal jurisdiction over Defendants because Defendants are all located within this judicial district or operates, conducts, engages in, or carries on a business or business venture or transact business within this judicial district.

11. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(1) because all Defendants reside in this judicial district pursuant to 28 U.S.C. 1391(c)(2); pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in this judicial district; and pursuant to 28 U.S.C. 1391(b)(3) because Defendants are subject to personal jurisdiction in this judicial district.

12. Demand has been made by Albi continuously while she was the director in 2014 and 2015 on the board and the board refused to act.  Hence making a further demand on Industrial's shareholder Pau to institute this action would be futile as she is the wife of Defendant Cavicchi and likely involved in the scheme at issue plus she refused the demands to act in 2014 and 2015 when she was in the Board.

## FACTS APPLICABLE TO ALL COUNTS

13. Plaintiff, Stefania Albi, is an Italian citizen, minority shareholder and sole director of Industrial at the time when the Cruise Defendants agreed to purchase a Desalinator from Industrial and Defendants accepted delivery of the Desalinator.  Albi has been Industrial's sole director and minority shareholder since about 2012. She owns forty-percent (40%) of shares in Industrial. On the contrary, Pau is Industrial's majority shareholder and owns sixty-percent (60%) of shares in Industrial.

14. PCH and OC (collectively "Cruise Defendants") are business entities based in Florida and focus primarily with the operation of several premium cruises both domestically and internationally.

15. Upon information and belief, Industrial, through the approval and authority of the sole director Albi, and Cruise Defendants have been conducting business with each other since 2011. Therefore, the controversy arises after almost two years of business relations between Industrial and Cruise Defendants.

16. Based on the recommendation of Defendant Gabriele Cavicchi ("Cavicchi"), Industrial's sales representative at the time of the alleged facts, and specifically on Cavicchi's personal relationship with Cruise Defendants' Senior Director of Technical Operations Carlo Paiella (agent of Prestige Cruse International, Inc.), and other top executives of

Cruise Defendants, including Paolo Mele (agent of Oceania Cruises, Inc.) and Sarah Roche (agent for Prestige Cruise Holdings, Inc.), Albi, in her capacity as sole director of Industrial, agreed to have Industrial transact and develop a business relationship with Cruise Defendants.

17. As sales representative for Industrial, Cavicchi was responsible for Industrial's business activities with Cruise Defendants. As the sale representative for Industrial, Cavicchi had the duty to act in the best interest of the company in transacting with third parties, placing the interest of the company before his own personal interests and disclosing any conflicting relations with third parties.

18. Albi, being sole director of Industrial, agreed that Cruise Defendants enter into a commercial contract with Industrial for the purchase of certain equipment and machineries for Cruise Defendants' fleet of cruise ships.

19. Albi, in her capacity as sole director of Industrial, promoted fruitful business relations between Industrial and Cruise Defendants, which resulted in Industrial sending numerous invoices to Cruise Defendants and Cruise Defendants paying said invoices directly to a Deutsche Bank account owned and controlled by Industrial. Consequently, on the basis of the several transactions that Industrial and Cruise Defendants agreed to, Cruise Defendants had direct knowledge of Industrial's account.

20. On or about July 31, 2012, Plaintiff and Cruise Defendants agreed to the purchase from Industrial of a Desalinator Model AMRO 24MS840 ("Desalinator") for the amount of €494,242.00 (hence, a contract was formed).

21. On or about July 31, 2012, Industrial provided to Cruise Defendants Invoice No. 18 for the partial payment of the Desalinator in the amount of €125,587.28 (see Exhibit A).

22. On or about October 31, 2012, Industrial delivered the Desalinator to Cruise Defendants.

23. On or about October 31, 2012, Cruise Defendants accepted delivery of the Desalinator by Industrial.

24. On or about December 31, 2012, Industrial provided to Cruise Defendants Invoice No. 20 for the remaining payment of the Desalinator in the amount of €345,972.10 that Albi approved in her capacity as sole director of Industrial (see Exhibit B).

25. In accordance with the parties' previous course of dealings and instruction, and on the basis of what agreed between Industrial and Cruise Defendants, Cruise Defendants were to pay Invoice Nos. 18 and 20 directly to Industrial's Deutsche Bank account (see Exhibits A and B).

26. Both invoices reflect the identity of Cruise Defendants as the one requesting the goods and the recipient of the goods (i.e. Oceania Cruises and RRodriguez@prestigecruiseholding.com of Prestige Cruise Holding, Inc.).

27. On the contrary of the parties' previous course of dealing and instruction, Cruise Defendants failed to direct the payment to Industrial's Deutsche Bank account payments for Invoice Nos. 18 and 20 and made the payment to an Emirates NBD Bank account associated with Cavicchi's name and located in Dubai, United Arab Emirates, based on an invoice by a "Yodit Enterprises FZE," which at no time was or is affiliated with or connected in any way to Industrial or Albi (see Exhibit C). At no point did Cruise Defendants and their agents inform Albi, in her capacity as sole director of Industrial and as 40% shareholder, that Cruise Defendants received a completely different invoice from that of the parties' previous course of dealings and instruction, which included a completely different company name, (i.e. not Industrial Marine S.r.l, but Yodit Enterprise

FZE), a completely different beneficiary and a completely different bank account connected to an off-shore company.

28. Up to this date, Cruise Defendants have failed to pay Invoice Nos. 18 and 20 for a total amount of €471,559.38 (See Exhibits A and B), causing a significant harm to Industrial.

29. Between October 2013 and February 2014, Albi, being sole director of Industrial, attempted to resolve the issue amicably with Cruise Defendants, despite the substantial amount at stake.

30. On or about April 29, 2015, Albi, in her capacity as sole director of Industrial, through its legal representatives, contacted Cruise Defendants to request immediate payment of the amounts owed.

31. In response to the April 29, 2015 demand, Cruise Defendants first alleged a theory of good faith payment to this different account, in a different jurisdiction, to a different party, but still, in good faith, and later alleged that performance was defective (see Exhibit D). Ms. Albi, as sole director of Industrial, was responsible for the delivery of the goods to Cruise Defendants pursuant to the parties' agreement. Upon Cruise Defendants' acceptance of the delivery of goods, Industrial invoiced Cruise Defendants for a total amount of €471,559.38, but Cruise Defendants refused to pay Industrial for Industrial's delivery and performance.

32. The Cruise Defendants did not comply with their obligation to pay the value of the contract when Defendants made payments on the invoices described above to an Emirates Account associated with Defendant Cavicchi's name.  Additionally, due to Cavicchi's personal relationships with Cruise Defendants – specifically with agents Carlo Paiella, Paolo Mele and Sarah Roche – Cruise Defendants were able to get materials and goods

from Industrial as well as direct discounts for said goods in the form of repayment by Cavicchi in a quid pro quo arrangement who had direct access to the monetary payments made by Cruise Defendants by way of his off-shore bank account. The agents of Cruise Defendants received discounts from Cavicchi in exchange for the agents to send payment to Cavicchi's personal account. All the while, the Cruise Defendants knew Cavicchi was involved in a fraudulent scheme and knew he was not going to forward the money to Industrial and still actively participated. Although Albi, as sole director of Industrial, relied on Cavicchi's recommendations, as sales representative of the company, and Cruise Defendants' alleged goodwill to develop a business relationship with Industrial, Cavicchi and Cruise Defendants' fraudulent conduct caused direct damage to Industrial. Subsequently, Albi was removed as sole director of Industrial. Consequently, Cavicchi in his capacity as sales representative for Industrial, failed to act with the duty of care that an employee is required to comply with and disregarded Albi's arrangements, as sole director for Industrial.

33. Cavicchi made Industrial his own personal instrument to carry out his fraudulent scheme.
34. More specifically, through personal connections of Cruise Defendants with Pau, majority (60% percent interest) shareholder of Industrial, wife of Cavicchi, who ultimately received the payment in Dubai, Defendants Cavicchi and Cruise Defendants caused (i) the insolvency status of Industrial;  (ii) the loss of income for Industrial via the misdirection of the price of the contract to this Yodit Enterprises FZE (see Exhibit C). The injury suffered by Industrial was the actual and proximate cause of the Defendants' fraudulent conduct and refusal to pay the invoices. Subsequently, Industrial's direct and indirect injury can be redressed only by holding Defendants accountable for Industrial's

economic losses and by ordering Defendants to refund Industrial of the economic losses suffered. Additionally, Defendants' fraudulent actions were the actual and proximate cause of Industrial becoming financially defunct.

35. Plaintiff Albi fairly and adequately represents the interests of Industrial's shareholders or in enforcing the right of the corporation. Albi is not only a 40% shareholder but was the sole director of Industrial.

36. In her quality as minority shareholder, Albi was unable to obtain the consent of the majority shareholder, Pau, to file this cause of caution. Furthermore, upon Albi's request to file a direct cause of action on behalf of Industrial, Albi's request was denied.

37. Albi made requests upon Pau throughout 2014 and 2015 to take legal action and Pau refused.

## COUNT I – BREACH OF CONTRACT

(as to Cruise Defendants)

38. Plaintiff reasserts and incorporates by reference the allegations set forth in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.

40. A contract existed between Industrial and the Cruise Defendants.

41. The agreement was for Industrial to provide the Cruise Defendants with a desalinator and in exchange for the Cruise Defendants to pay Industrial € 471,559.38.

42. The contract is evidenced by Exhibit A and B.

43. Further, pursuant to Sections 672.201 and 672.606, Florida Statutes, Plaintiff does not require proof of a written contract as Cruise Defendants accepted the goods and they were conforming.

44. The Cruise Defendants refused to pay the invoices A and B and hence breached the contract.

45. Plaintiff has been materially damaged by the non-payment of the invoices because the cost of the goods and the loss therein caused Plaintiff to become financially defunct.

WHEREFORE, Plaintiff demands entry of judgment against Defendants for the full amount of Plaintiff's damages in an amount of no less than € 471,559.38 Euros plus reasonable attorneys' fees, costs, interest and any further relief this Court deems just and proper.

## COUNT II - ACCOUNT STATED

(as to Cruise Defendants)

46. Plaintiff reasserts and incorporates by reference the allegations set forth in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

47. Before the institution of this action plaintiff and defendant had business transactions and a course of dealing between them since 2011.

48. Prior to sending the goods so listed in Exhibit A and B Cruise Defendants agreed to the resulting balance.

49. Plaintiff rendered statements of the account to the Cruise Defendants, a copy being attached as Exhibit A and B, and defendant did not object to the statement.

50. Cruise Defendants accepted deliver of the goods at issue i.e. the Desalinator.

51. Cruise Defendants have refused to make payment for the goods sold to them even though they accepted the goods and the goods were in fact conforming.

52. Plaintiff made repeated demands for payment to the Cruise Defendants and they have refused to make payment.

53. As the Cruise Defendants accepted the goods (but paid a third party) the statute of frauds (Sections 672.201 and 672.606, Florida Statutes) does not require proof of a written contract.

54. Cruise Defendants owe plaintiff € 471,559.38 that is due with interest since December 31, 2012 on the account.

WHEREFORE, Plaintiff demands entry of judgment against Defendants for the full amount of Plaintiff's damages in an amount of no less than € 471,559.38 Euros plus reasonable attorneys' fees, costs, interest and any further relief this Court deems just and proper.

## COUNT III FOR PRICE OF GOODS—GOODS SOLD AND DELIVERED

## [§ 672.709(1)(a), Fla. Stat.]

(as to the Cruise Defendants)

55. Plaintiff reasserts and incorporates by reference the allegations set forth in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

56. In 2012, Plaintiff and Cruise Defendants entered into a contract for the sale of goods, whereby Plaintiff agreed to sell and deliver, and defendant agreed to accept and pay for, a Desalinator for € 471,559.38. A copy of invoices for sale of these goods, marked "Exhibit A and B," is attached to this complaint.

57. On October 31, 2012, at 8300 NW 33rd Street, Suite 100, Miami, FL 33122, and in accordance with the terms of their contract, Plaintiff delivered the goods to Cruise Defendants.

58. The total price to be paid by Cruise Defendants for the goods so delivered was € 471,559.38 and, in accordance with the terms of the contract or agreement, payment by Cruise Defendants was due on delivery of the goods. However, although the goods have

been delivered to Cruise Defendants, and were accepted by Cruise Defendants, Cruise Defendants have not paid the price due under the contract.

59. As the Cruise Defendants accepted the goods (but paid a third party) the statute of frauds (Sections 672.201 and 672.606, Florida Statutes) does not require proof of a written contract.

60. Cruise Defendants are liable to Plaintiff pursuant to Section 672.709(1)(a) of the Florida Statutes for the agreed price of the goods in the amount of € 471,559.38 as set forth in the invoices between the parties.

WHEREFORE, Plaintiff demands entry of judgment against Defendants for the full amount of Plaintiff's damages in an amount of no less than € 471,559.38 Euros plus reasonable attorneys' fees, costs, interest and any further relief this Court deems just and proper.

## COUNT IV – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

(against all Defendants)

61. Plaintiff reasserts and incorporates by reference the allegations set forth in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

62. Pursuant to the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Industrial is entitled to recover the price of the contract and the consequential losses that has followed on the following grounds: (1) Defendants Cavicchi and Cruise carried out deceptive acts and became responsible for an unfair practice when respectively Cavicchi and Cruise Defendants deceived Albi and Industrial by openly agreeing to purchase the Desalinator and pay the price to Industrial when they had no intent on paying Industrial. Defendant Cruise Defendants deceived Albi and Industrial, in her capacity as sole

director of Industrial, when Cruise Defendants pretended that it would pay the price to Industrial at its Deutsche Bank account. Secretly and unbeknownst to Industrial and Albi, Cruise Defendants agreed with Cavicchi that the payment would be made to an account under Cavicchi's name in Dubai.  Cavicchi's unfair practice and Cruise Defendants deceptive acts resulted in Industrial being harmed due to the nonpayment of the invoice which in turn caused Industrial to become financially defunct.

63. More specifically, the deceptive act that Cruise Defendants made was the failure to comply with the standard payment to Industrial and intentionally involving themselves in a fraudulent act in which Cruise Defendants participated in diverting payment away from Industrial so that Cavicchi could take the payment for himself to the detriment or theft of Industrial. Cavicchi offered the Cruise Defendants in exchange for their participation in the scheme discounts on present and future goods sold to Cruise Defendants.  In several prior occasions Cruise Defendants had purchased goods from Industrial and deposited the payment to Industrial's Deutsche Bank account. By the Defendants' failure to inquire about the abrupt change of Industrial's bank information, and subsequent payment without verifying that information with Albi, in her capacity as sole director of Industrial, Cruise omitted to verify the new bank information where it was requested to make the payment.

64. Defendants Cruise's omission in verifying the bank account information provided by Defendant Cavicchi can be qualified as Defendants' "willful blindness" and such willful blindness clearly demonstrates evidence of their knowing participation in the scheme, because Cruise Defendants willfully decided not to retrieve additional information from

      Albi, in her capacity as sole director of Industrial, knowing that the payment to Cavicchi's account did not comply with Industrial's course of dealing.

65. By reason of the foregoing, Plaintiff is entitled to recover actual damages from Defendants.

WHEREFORE, Plaintiff demands entry of judgment against Defendants for the full amount of Plaintiff's damages in an amount of no less than € 471,559.38 Euro plus reasonable attorneys' fees, costs, interest and any further relief this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, respectfully requests the Court to enter judgment in its favor on all claims against the Defendants for an amount of no less than € 471,559.38 Euro, and to award such other and further relief as the Court deems just and proper, including, but not limited to:

a) Compensatory damages in an amount to be proven at trial for any loss sustained by Plaintiff;

b) Prejudgment and post-judgment interest at the applicable rates pursuant to Federal Code of Civil Procedure;

c) An award of costs and attorney's fees, incurred with respect to the commencement and prosecution of this action; and

d) Such further relief as the Court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## VERIFICATION

I have read the Second Amended Complaint and affirm its truthfulness.

_____

Stefania Albi

Dated: 12/23/16

Respectfully submitted,

/s/ David Constantino

---

DAVID CONSTANTINO, ESQ.
Florida Bar No.:0942081
david.constantino@tlrtlaw.com
TOSOLINI, LAMURA, RASILE & TONIUITTI, LLP
407 Lincoln Road, Suite 11-C
Miami Beach, FL 33139
Telephone:  305-534-0420
Facsimile:  646-536-8719
Attorneys for Plaintiff Stefania Albi